# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CIVIL ACTION NO. 4:11-CV-00021-JHM**

**MARIA ELENA BARBOUR**  **PLAINTIFF**

**V.**

**MARYLAND CASUALTY COMPANY**  **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Maryland Casualty Company's Motion for Partial Summary Judgment [DN 16] and Amended Motion for Partial Summary Judgment [DN 18],[1] as well as Plaintiff Maria Elena Barbour's Motion for Leave to File First Amended Complaint [DN 26]. Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

On September 14, 2008, Owensboro, Kentucky was subjected to a wind storm stemming from Hurricane Ike. (Barbour Aff. ¶ 2.) This wind storm caused damage to property owned by Plaintiff Maria Barbour, namely Village Square Properties. (Id. at ¶ 3.) At the time of the damage, Plaintiff had a casualty insurance policy covering the Village Square Properties issued by Defendant Maryland Casualty Company. (Id.) Plaintiff reported the loss to Zurich, one of Defendant's affiliates, and by January 24, 2009, Defendant had accepted the loss and issued Plaintiff a check for $87,509.87 representing Defendant's adjuster's estimate of the actual cash value of the loss, less Plaintiff's policy deductible. (Id. at ¶ 4.) Plaintiff disagreed with Defendant that this amount represented the true value of her claim and sought assurances from Defendant that cashing the check

---

[1] The Amended Motion for Partial Summary Judgment merely corrects a typographical error contained in Defendant's initial Motion for Partial Summary Judgment.

would not preclude her from pursuing the claim further or filing a supplemental claim. (Id. at ¶ 5.)

In response to this concern, Defendant issued letters dated September 9, 2009, and September 24, 2009, explaining that depositing the check would not impair Plaintiff's ability to further pursue the claim or a supplemental claim, but that any such claim "will be evaluated in accordance with the terms and conditions of your policy." (Barbour Aff., Ex. B, Letter from Norb Duniecki dated Sept. 9, 2009; Ex. C, Letter from Timothy Gardner dated Sept. 24, 2009.) Immediately following this language was a reservation-of-rights and defenses which stated "By this letter, we reserve all of our rights and defenses available under the policy and at law. Our investigation of the claim and all efforts taken in regard to the determination of coverage was without waiver of the terms and conditions of the policy." (Barbour Aff., Ex. B; see also Ex. C (containing a similar reservation-of-rights provision).)

Plaintiff also submitted claims with Defendant and/or its affiliates, Zurich and Farmers Insurance, for damage caused by a frozen sprinkler system that occurred on January 18, 2009 (Id. at ¶ 9), damage caused by an ice storm that occurred on January 27, 2009 (Id. at ¶ 11), and damage caused by another wind storm that occurred on February 11, 2009 (Id.) In an effort to have these claims resolved, Plaintiff retained attorney, Robert Vic Bowers, Jr., in September 2009. (Bowers Aff. ¶ 2.) On March 24, 2010, Mr. Bowers sent a letter to Timothy Gardner, the adjuster handling Plaintiff's Hurricane Ike claim, advising Mr. Gardner that Plaintiff had retained him to represent her regarding that claim. (Bowers Aff., Ex. A, Letter from Robert Bowers dated March 24, 2010.)

Following Mr. Bowers notification to Defendant, Jeff Triplett, a Farmer's Insurance adjuster, sent a letter dated April 30, 2010, to Mr. Bowers acknowledging receipt of Mr. Bowers' letter and advising him that Plaintiff's Hurricane Ike claim had been transferred to Mr. Triplett. (See Bowers

Aff., Ex. B, Letter from Jeff Triplett dated April 30, 2010.)  In this letter, Mr. Triplett states that he has attempted to contact Mr. Bowers' office twice, to no avail, and then requests that Mr. Bowers forward several proposed quotes to Mr. Triplett.  (Id.)  The letter's final paragraph is a reservation-of-rights and defenses under the insurance policy.  (Id.) Following Mr. Triplett's April 30, 2010 letter, Mr. Gardner also sent a letter to Mr. Bowers.  (See Bowers Aff., Ex. C, Letter from Timothy Gardner dated May 3, 2010.)  The letter from Mr. Gardner advises Mr. Bowers that because Plaintiff had filed multiple claims, which were being adjusted by Farmer's Insurance, that Zurich was assigning its claim, the Hurricane Ike claim, to Farmer's as well.  (Id.)  Mr. Gardner also stated that all of Plaintiff's claims were being consolidated to one adjuster, which was Mr. Triplett.  (Id.)

After assuming control of the Hurricane Ike claim, Mr. Triplett employed All Seasons Roofing to inspect Plaintiff's property and prepared an estimate of the damage.  (Bowers Aff., Ex. D, Letter from Jeff Triplett dated May 11, 2010.)  However, All Seasons Roofing was unable to receive permission to inspect the damaged premises from either Plaintiff or Mr. Bowers.  (Id.)  Mr. Triplett had also been unable to contact Mr. Bowers over the telephone despite leaving numerous messages with Mr. Bowers' office.  (Id.)  By letter, Mr. Triplett reminded Mr. Bowers of his client's duty to comply with the terms of the policy and concluded by stating that "[i]t is the intention of Maryland Casualty Company to invoke this and all other conditions in their entirety, and no action or statement of any of the company's representatives in the course of investigation should be construed as a waiver."  (Id.)

This letter by Mr. Triplett in May was followed by three more letters on June 1, 2010, July 6, 2010, and August 25, 2010.  Each of these letters conveys a similar theme–Mr. Triplett's inability to receive any response from Mr. Bowers and a request that Mr. Bowers assist Mr. Triplett in

resolving Plaintiff's claim. Mr. Triplett also sent copies of the July and August letters to the Plaintiff. (See Bowers Aff., Ex. F, Letter from Jeff Triplett dated July 6, 2010; Ex. G., Letter from Jeff Triplett dated August 25, 2010.) The letter sent on August 25, 2010, begins by stating "This loss occurred nearly two years ago. . . . Since my involvement, I have received no cooperation from your office. The only communication I have received was a representation letter dated March 24, 2010." (Bowers Aff., Ex. G.) The letter then informs Mr. Bowers that Plaintiff's policy provides that

> The Maryland Casualty Company . . . may not be sued unless there has been full compliance with all of the terms and conditions of this insurance policy. Please refer to the condition section of the policy issued to the insured, which states the following:
>
>> E. Legal Action against Us - No one may bring a legal action against us under this Coverage Part unless:
>> 1. There has been full compliance with all of the terms of this Coverage Part; and
>> 2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(Id.) The letter concludes with the following reservation-of-rights: "Please be advised that Maryland Casualty Company does not waive nor shall it [sic] deemed to have waived, any of its rights or obligations under the terms, conditions, provisions or limitations of the policy, all of which are specifically reserved." (Id.)

Notwithstanding this letter and notification that the two year limitation period was set to expire, Mr. Triplett did not hear back from Plaintiff or Mr. Bowers before September 14, 2010. On September 21, 2010, Mr. Triplett sent Mr. Bowers another letter, to which Plaintiff again was copied. (Bowers Aff., Ex. H, Letter from Jeff Triplett dated September 21, 2010.) This letter begins: "Two years have now passed since this loss occurred." (Id.) The letter states that Mr.

Triplett has been unable to contact Mr. Bowers and that if Mr. Triplett does not hear back from Mr. Bowers by October 15, 2010, that Plaintiff's Hurricane Ike claim will be closed. (Id.) The letter concludes with the same reservation-of-rights provision found in the August 25, 2010, letter. (Id.)

Mr. Bowers sent a letter to Mr. Triplett the next day, on September 22, 2010, (Bowers Aff., Ex. I), and then contacted Mr. Triplett by telephone on September 23, 2010, (see Bowers Aff., Ex. J). Mr. Bowers stated that he was awaiting some further information, and that he "hoped" to contact Mr. Triplett again the following week. (Id.) Approximately forty-seven days later, Mr. Triplett had yet to hear back from Mr. Bowers. (Bowers Aff., Ex. K) Mr. Triplett again threatened to close the file on Plaintiff's Hurricane Ike claim in thirty days based upon a lack of cooperation and inability to document further loss. (Id.) Mr. Triplett again concluded his letter with the standard reservation-of-rights and non-waiver clause that had accompanied his earlier letters. (Id.) Upon receipt of Mr. Triplett's last letter, Mr. Bowers made contact and explained that Plaintiff's illness and hospitalization were interfering with the resolution of her claimed losses. (See Bowers Aff., Ex. L.) Finally on December 15, 2010, Mr. Bowers sent Mr. Triplett a letter which included proposals from local contractors for the repairs to Plaintiff's roof. (See Bowers Aff. Ex. M.)

Mr. Bowers and Mr. Triplett communicated by telephone on December 30, 2010, at which time Mr. Triplett advised that if the case could be settled for $500,000 that he would have a check issued to Plaintiff immediately so that he could close his file. (Bowers Aff. ¶ 22.) Mr. Bowers advised Mr. Triplett that he was withdrawing from representing Plaintiff and that he did not believe $500,000 was sufficient to settle the claim, but that he would relay the number to Plaintiff's new attorney Ronald M. Sullivan. (Id.) Mr. Triplett stated that he hoped to resolve the claim, but never mentioned the two year statute of limitations that had already expired on Plaintiff's Hurricane Ike

claim. (Id.) Furthermore, during the phone conversations of September 23, 2010, and December 30, 2010, Mr. Triplett assured Mr. Bowers that the language regarding Defendant's reservation-of-rights, included numerous times within the correspondence between the two, was "standard language that Farmers puts into its correspondence and to not be distressed because he and [Mr. Bowers] were working toward a negotiated settlement." (Id. at ¶ 23.)

On January, 19, 2011, Mr. Sullivan sent Mr. Triplett an estimate for the total repairs to Plaintiff's premises. (Barbour Aff., Ex. E.) Mr. Sullivan then sent another letter on January 24, 2011, advising Mr. Triplett that he was filing suit on Plaintiff's September 14, 2008 Hurricane Ike and January 27, 2009 ice storm claims because of the two year statute of limitations provision. (Barbour Aff., Ex. F.) Mr. Triplett acknowledged receipt of Mr. Sullivan's letter regarding the filing of the lawsuit and said:

> Unfortunately, I am only handling the claim that occurred September 14, 2008 as the result of the hurricane. I am not involved nor have I been involved in any of the other matters mentioned in your letter. I will continue to attempt to reach a fair and reasonable settlement of claim 1015928164.

(Barbour Aff., Ex. H.) Although noting that the Hurricane Ike loss occurred more than two years ago, Mr. Triplett's letter does not actually discuss the statute of limitations or a reservation-of-rights. (Id.) Instead Mr. Triplett states "it is my hope to work together to resolve this claim." (Id.)

On September 19, 2011, Defendant issued Plaintiff a check in the amount of $917,930.95 for damage to Plaintiff's real property caused by Hurricane Ike and the January 27, 2009 ice storm. (Barbour Aff., Ex. I.) Defendant also issued Plaintiff a check in the amount of $45,400 for damage to personal property from the two claims. (Id.) In the letter accompanying the checks, Defendant is clear that "[p]ayment is made under reservation of the company's continuing right to assert applicable policy defenses in the ongoing litigation." (Id.) Defendant "wish[ed] to inform [Plaintiff]

there are time limits as found in the Conditions language of your policy." (Id.) Defendant then cited the provision of the policy which requires that a suit against Defendant must be "brought within 2 years after the date on which the direct physical loss or damage occurred." (Id.) The letter concludes again with a reservation-of-rights and non-waiver provision. (Id.)

Plaintiff's initial Complaint alleges claims for breach of contract related to Defendant's failure to pay for the Hurricane Ike and January 27, 2009 ice storm losses suffered by Plaintiff. Defendant has now moved for partial summary judgment as to the Hurricane Ike claim contending that it is barred by the two-year statute of limitations found within the policy's provisions.

Two days after briefing on the motion for partial summary judgment was completed, Plaintiff filed its Motion for Leave to File First Amended Complaint alleging three new claims in addition to her original breach of contract claim. Defendant has failed to respond to Plaintiff's motion to amend.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical

doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

**A. Motion for Partial Summary Judgment**

The Kentucky Supreme Court has "recognized the validity of insurance contract provisions requiring as a condition to sue that the action must be 'commenced within the time specified by the policy.'" Edmondson v. Pa. Nat. Mut. Cas. Ins. Co., 781 S.W.2d 753, 756 (Ky. 1989). The policy at issue in this case firmly establishes that "[n]o one may bring a legal action against [Defendant] under this Coverage Part unless . . . [t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred." (Def.'s Mot. for Partial Summ. J., Ex. 5 Insurance Policy, Business and Personal Property Coverage Form, General Conditions E.2.) Plaintiff does not challenge the validity of this provision.

Plaintiff's Hurricane Ike loss occurred on September 14, 2008. (Barbour Aff. ¶ 2.) Defendant has moved for partial summary judgment as to the Hurricane Ike claim because Plaintiff did not file suit until January 24, 2011, more than two years after the Hurricane Ike loss occurred. Plaintiff contends that the motion for partial summary judgment should be denied based on the theories of waiver and estoppel.

The Kentucky Supreme Court clarified the difference between the two theories as follows:

> "Although the terms are misused and interchanged, there truly is a clear distinction between them. Waiver is bottomed on a voluntary and intentional relinquishment of a known, existing right or power under the terms of an insurance contract. It is the expression of an intent not to insist upon what the law affords. The intention may be inferred from conduct and knowledge and may be actual or constructive, but both intent and knowledge are essential elements of waiver. . . .
> Estoppel gives no effect to a presumed intention, but defeats inequitable conduct. It offsets misleading conduct, acts, or representations which have induced a person entitled to rely thereon to change his position to his detriment."

Edmondson, 781 S.W.2d at 755 (quoting Long, The Law of Liability Insurance, Sec. 17.14).

Plaintiff first contends that "[t]he cumulative effect of the conduct of Maryland adjusters constitutes a waiver of Maryland's two-year suit limitation contract provision as a matter of law." (Pl.'s Resp. 9.) In support of this argument, Plaintiff cites National Surety Marine Insurance v. Wheeler, 257 S.W.2d 573 (Ky. 1953), wherein the court found an insurance company waived its statute of limitations provision when it did not deny liability but instead continued to negotiate a settlement of the insured's pending claim even after the limitations period expired. Id. at 574. Defendant contends that under K.R.S. § 304.14-280, negotiations and partial payment of claims are not waivers of a limitations provision and that Wheeler is distinguishable because it was decided before K.R.S. § 304.14-280 was enacted. See Hornback v. Hornback, 667 S.W.2d 399, 401 (Ky. Ct. App. 1984) (distinguishing Hartford Fire Insur. Co. v. Moore, 412 S.W.2d 860 (1967), which analyzed waiver, because it was decided prior to the enactment of K.R.S. § 304.14-280). K.R.S. § 304.14-280 states in pertinent part that

> Without limitation of any right or defense of an insurer otherwise, none of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer thereunder:
> (1) Acknowledgment of the receipt of notice of loss or claim under the policy.
> (2) Furnishing forms for reporting a loss or claim, for giving

9

> information relative thereto, or for making proof of loss, or receiving or acknowledging receipt of any such forms or proofs completed or uncompleted.
> (3) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim.
> (4) Making advance or partial payments under insurance policies as an accommodation to or on behalf of any person suffering injury, loss or damage, and any such payment shall be credited to the final settlement or judgment.

K.R.S. § 304.14-280.

The Court agrees with Defendant that K.R.S. § 304.14-280 is clear that neither negotiations nor partial payments constitute a waiver of a limitations provisions and that Wheeler is distinguishable from the instant case because it was decided before the legislature enacted K.R.S. § 304.14-280. However, Plaintiff has produced evidence that creates a genuine dispute of material fact regarding Defendant's intent to use the two-year statute of limitations as a defense. In Mr. Bowers' affidavit, he states that Defendant's agent, Mr. Triplett, gave him assurances during telephone conversations that the reservation-of-rights language was "boiler plate" language and that Mr. Bowers need not concern himself about it because Mr. Triplett "was sure the claim could be settled, and that the parties should keep working on it." (Bowers' Aff. ¶ 23.) Furthermore, Mr. Sullivan advised Mr. Triplett by letter that he was filing suit on the Hurricane Ike claim on January 24, 2011, "[b]ecause of the two year provision in the contract." (Barbour Aff., Ex. F.) In response, Mr. Triplett's letter back to Mr. Sullivan, attempts "to point out some facts that may assist us in reaching a resolution to this claim." (See Barbour Aff. Ex. H.) Nowhere in these "facts" is any discussion of a reservation-of-rights, the two-year limitations period, or the fact that the period had already expired. (See id.) Instead the letter discusses the general history of the claim, the different estimates that had been obtained up to that point, and Mr. Triplett's doubts regarding the damage

10

claimed by Plaintiff's estimate. (See id.)

The Court finds that this evidence, coupled together, creates a genuine dispute of material fact as to whether these statements were an "expression of an intent not to insist upon what the law affords[,]" Edmondson, 781 S.W.2d at 755 (internal quotation marks omitted), namely Defendant's intent to use the two-year statute of limitations period on the Hurricane Ike claim. Therefore, the Court finds that partial summary judgment on the Hurricane Ike claim based upon the statute of limitations is not appropriate at this time and **DENIES** the Defendant's motion.[2]

**B. Motion to Amend**

After briefing concluded on Defendant's motion for partial summary judgment, Plaintiff moved for leave to file her First Amended Complaint. The First Amended Complaint adopts the allegations of the original Complaint, with the exception of deleting any claims premised upon the January 17, 2009 sprinkler system freeze lose. (First Amend. Compl. ¶ 1.) The Amended Complaint also includes the new allegation that Plaintiff's losses from the Hurricane Ike windstorm and January 27, 2009 ice storm have now worsened to the point that Plaintiff's building must be demolished and reconstructed. (Id. at ¶ 3.) Along with these factual additions, Plaintiff has essentially alleged three new claims against Defendant: (Count III) breach of the duty of good faith and fair dealing by Defendant for its failure to pay the two identified claims in full; (Count IV) violation of the Kentucky Unfair Claims Settlement Practices Act, K.R.S § 304.12-230 ("KUCSPA"); and (Count V) violation of K.R.S. § 304.12-235(1) and (2). Defendant has failed to respond to Plaintiff's motion to amend.

---

[2] As the Court finds that an analysis of waiver is dispositive of the current motion, it makes no ruling regarding the applicability of the doctrine of estoppel.

11

Fed. R. Civ. P. 15(a)(2) states that after a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave." A district court should freely grant a plaintiff leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a district court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

No objections being raised to the motion to amend, the Court finds that justice requires that Plaintiff be permitted to amend her Complaint and **GRANTS** Plaintiff leave to file her First Amended Complaint.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Maryland Casualty Company's Motion for Partial Summary Judgment [DN 16] and Amended Motion for Partial Summary Judgment [DN 18] are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Maria Elena Barbour's Motion for Leave to File First Amended Complaint [DN 26] is **GRANTED**.

cc: counsel of record